# Exhibit A



**BOULETTE&GOLDEN L.L.P.**

BOULETTE & GOLDEN L.L.P.
1221 S. MOPAC EXPRESSWAY
AUSTIN, TEXAS 78746
(512) 732-8900 - MAIN
(512) 732-8905 – FAX
www.boulettegolden.com

Gregg R. Kronenberger
(512) 732-8903 – Direct
gregg@boulettegolden.com

August 8, 2008

**By Facsimile (210) 281-2552
and First Class U.S. Mail**

E. Thomas Price
Investigator
U.S. Equal Employment Opportunity Commission
San Antonio Field Office
5410 Fredericksburg Road
Suite 200
San Antonio, Texas 78229-3555

    Re:    EEOC Charge No. 451 2008 01332
            *Philip Cannata v. Catholic Diocese of Austin/St. John Neumann Catholic Church*

Dear Mr. Price,

    St. John Neumann Catholic Church ("SJN") submits this response to the above numbered charge of discrimination filed by Dr. Philip E. Cannata ("Cannata"). It is SJN's position that the charge is without merit and that the Commission should issue a no reasonable cause determination.

### Responses to Request for Information

1. <u>Discharge</u>

    a. Cannata was discharged on August 8, 2007.
    b. Cannata was discharged for a pattern of insubordination including without limitation:
        i. refusal to work in good faith with SJN on budget adjustments;
        ii. refusal to follow instructions;
        iii. disrespect and ill treatment of the pastor, SJN staff, and parishioners by Cannata and his family members.
    c. Cannata had no appeal rights.
    d. No employee recommended the discharge.

**Boulette & Golden, LLP**
E. Thomas Price
August 8, 2008
Page 2

  e. Rev. Kirby Garner, pastor of SJN, made the decision to terminate Cannata's employment. Fr. Kirby is a white male, U.S. citizen, date of birth 11/03/1950.

  f. See Cannata personnel documents enclosed as Attachment 1.

2. SJN's July 1, 2007 Employee Handbook (Attachment 2) contains provisions regarding discipline and discharge in Section Four, pages IV-1 through IV-4, and in Section Five, page V-2. In all cases, the pastor is reserved the right to impose any disciplinary action he sees fit, and retains sole discretion over termination decisions. In addition, the Employee Handbook clearly states that with SJN is at all times at-will.

3. SJN's Employee Handbook was effective July 1, 2007, the beginning of the Church's fiscal year. SJN also attaches as Attachment 3 the previously effective Employee Handbook. These handbooks contain all written policies relating to employee duties and conduct. The employees learn these rules by reading the handbook and communicating with management.

4. No employees committed the same or substantially similar offenses as those that caused Cannata's termination.

5. Within the relevant time period, one employee other than Cannata was discharged. That employee is Cynthia Selman, parish secretary (which is essentially a receptionist who performed secretarial duties). Selman is a white female U.S. Citizen, DOB 01/07/1947 was terminated for inability to perform the duties of her position.

6. After a nationwide search that lasted over 6 months, SJN chose Zvonimir Nagy to fill the position of Music Director, and his date of hire was 04/07/2008. Nagy is a white male, date of birth 12/13/1978. Nagy is a U.S. citizen of Croatian national origin; at the time of his hire he was a legal permanent resident.

7. Cannata did not apply for unemployment compensation benefits. SJN does not participate in the Texas Unemployment Compensation system.

## Statement of Position

A. <u>Background</u>

  1. <u>General.</u> St. John Neumann Catholic Church ("SJN" or the "Church") is a parish in the Austin Diocese of the Roman Catholic Church. There are 129 parishes in the Austin Diocese. Each parish is an autonomous business entity, with its own management, bank accounts, etc. The relationship between the parish and diocese is consultative; there is no parent-subsidiary or employer-employee relationship.

*Respondent, St. John Neumann Catholic Church*
*Response to EEOC Charge No. 451 2008 1332*

**Boulette & Golden, LLP**
E. Thomas Price
August 8, 2008
Page 3

SJN was started in 1984 and initially held Masses in a local elementary school before moving to 101 Westlake Drive. In January 2003, the Church relocated to its current campus at 5455 Bee Cave Road. After moving to the current campus, the Church built a Parish Hall (administrative offices, classrooms, meeting areas) and a Family Center, which serves as the worship space until a new church can be built. Once the new church is built, the Family Center will be converted to its intended use as a gymnasium/activities center. In addition to the worship space, the Family Center has a sacristy for clergy preparation, a music room, and a converted storeroom that served as a music office.

At the relevant time, the pastor of SJN was Rev. Kirby D. Garner ("Fr. Kirby"). Fr. Kirby took over as pastor in the summer of 2006, replacing Msgr. Ed Jordan, who had retired after leading SJN for several years.

In late 2005-early 2006, SJN initiated a capital campaign to finance the construction of a new church. Msgr. Jordan presided over the kickoff of the campaign, but the campaign was largely conducted under Fr. Kirby's tenure. The campaign successfully raised the necessary funds, and the parish has been planning the new church since early 2007.

2. <u>Church organization.</u> The top official at SJN is the pastor, and the pastor is the only person in the parish with the authority to hire and fire employees. As of 2007, SJN management was comprised of the following department heads: (1) music; (2) youth ministry; (3) religious education; (4) business administration; (5) liturgy and social ministry; (6) communications; and (7) facilities management and mother's day out. All department heads reported to the pastor.

3. <u>Music at SJN.</u> The charging party Dr. Philip E. Cannata ("Cannata") and his family have been performing music at SJN since approximately 1998. Cannata was formally hired as Music Director, a salaried position with SJN, in 2001. At the relevant time, Cannata has also maintained full-time employment with Sun Microsystems in Austin.

The Music Director was, at all times relevant to this case, responsible for ensuring that appropriate music was available and performed at all Masses requiring music, and at all other events at which SJN was expected to provide or perform music (for example, weddings, funerals, Stations of the Cross, special liturgies, etc.). SJN has five regular weekend Masses: Saturday 5:30 p.m., and Sunday at 7:30, 9:00, and 11:30 a.m. and 5:30 p.m.

Over the years, however, it evolved that some Masses did not require music, and that the level of music required at other Masses differed. For example, the Church has for several years had only a piano player and a song leader (cantor) at the Saturday 5:30 p.m. Mass, and no music at the Sunday 7:30 a.m. Mass. The 9:00 a.m. Sunday Mass has a small complement of musicians and a small "contemporary" choir, and the 11:30 a.m. Mass had more musicians and a large "traditional" choir. Finally, for the past several years, the music at the Sunday 5:30 p.m. Mass was provided by a volunteer adult choir, and Cannata had little or no interaction with or control over that choir or the music at the Sunday 5:30 Mass.

*Respondent, St. John Neumann Catholic Church*
*Response to EEOC Charge No. 451 2008 1332*

As of 2007, Cannata was ordinarily playing the piano for the Saturday 5:30 p.m. Mass and playing the piano and leading the choirs at the Sunday 9:00 a.m. and 11:30 a.m. Masses. The 9:00 a.m. choir was usually composed of adult volunteers, and some of the musicians were Cannata family members. Cannata has 9 children, many of whom, along with his wife Rita, performed in choirs and as cantors, sometimes on a paid basis. The 11:30 a.m. choir was comprised of adult volunteers and up to 9 Cannata family members, including Rita, adult and minor children. Some of the Cannata children also played instruments at the 11:30 Mass.

Although SJN never formally hired them, Rita and Cannata's daughter Jeanette also received payroll checks. Rita's payments were designated as for a "music assistant," and the bulk of the payroll checks paid to Jeanette were for a "part-time musician."

B. Events of 2007 Leading to Termination

1. <u>The budget process.</u> As a requirement for securing the necessary diocesan support, financing, and other approvals for the new church, SJN needed to disclose its financial information and develop a budget. To accomplish this, the parish appointed a Finance Council comprised of parishioners with experience in financial and accounting matters. The members of the council included Rich Saniuk, Fred Yeo, John Dirvin, and Robert Donathan. SJN Business Administrator and Liturgist Judy Gesch often attended the Finance Council meetings as a liaison to the Church.

Upon its review of the Church's finances, it became apparent to the Finance Council that there had been few controls on spending. The council's examination of the parish finances revealed that SJN needed to adopt a budget that reduced the Church's expenditures by $100,000. The Finance Council set about recommending such a new budget, and its recommendations included budget cuts across all departments. These recommendations where communicated to SJN department heads in early 2007, and included new target budgets for each department. The Church told the department heads that it would work with them to reach their target budget, and asked them not to attempt an end run on the process by involving Fr. Kirby.[1]

2. <u>The music department budget.</u> Prior to 2007, the SJN music department did not have a budget. Decisions on expenditures were made in Cannata's unsupervised discretion.

The music department expenses for the fiscal year July 2006-June 2007 are shown in Attachment 4. The expense record shows that under Cannata, the department spent a total of

---

[1] Like any organization, departments within the Church often competed for limited resources. Prior to Fr. Kirby's tenure, department heads, when faced with an impending limitation on their resources, took their disputes to the pastor. For example, Cannata and John Mosher in the youth ministry had a long-running disagreement about allocation of resources between their two departments. Since the Church had no formal budget, and the pastors tended to want to provide the most services with the least confrontation, these requests were often granted. As a result, the department head who complained the loudest, or last, often got what he or she wanted. The new administration under Fr. Kirby sought to end this practice, and this was clearly communicated to the department heads.

$86,964.41 from June 2006 to July 2007. Of that total amount, $57,890.73 went to payroll. Of the total payroll figure, Cannata's family received $51,645.73 (Cannata was paid, $27,890.73, his wife Rita received $12,600.00, and his daughter Jeanette was paid $11,155.00). Of the remainder of the total payroll, $5,915.00 went to music lessons and coaching, most of which directly benefited Cannata and his family. The budget also shows $1,980.00 under "Continuing Ed-Music Director", and $1,600.00 in "Special Music Stipends" paid to Cannata family members totaling including $800.00 to Jeanette Cannata for "Easter Cello." Therefore, of the approximately $87,000 spent by the SJN music department in that year, about $61,000 was paid directly to Cannata or his family members or for lessons for the benefit Cannata or his family members.

    3. <u>Mandated budget cuts and Cannata's response</u>. After a meeting will all department heads, the Finance Council sent each department head the new target budget. For the music department, this was communicated to Cannata by a Saturday March 10, 2007[2] e-mail from Rich Saniuk of the Finance Council. The new music department budget was to be $60,000.

    Cannata's response was argumentative and confrontational. The e-mail string of the discussion is attached as Attachment 5. Cannata's initial response demonstrated immediately that he had ignored the order not to involve Fr. Kirby; he had called Fr. Kirby on Saturday complaining about the new budget. Also in his initial response, Cannata called Saniuk a liar. In later responses, he argued about the council's method of cutting the budget, refusing to cooperate with the cuts as proposed.

    Cannata's refusal to cooperate escalated after his call to Fr. Kirby complaining about the budget. Cannata and parishioner Carl Monnin confronted Fr. Kirby publicly about the budget in front of the worship space after Fr. Kirby said 11:30 Mass on Sunday, March 11.[3] Fr. Kirby knew then that Cannata was unwilling to accept his authority or to work with the administration. Fr. Kirby did not take immediate action against Cannata, but planned to meet with him to address this inappropriate behavior.

    Then, on March 12, Cannata responded to the Finance Council's budget mandate by proposing cuts that would essentially eviscerate the music program. His proposal was:

"Here's my PROPOSED set of cuts for the music department:

Phil will reduce his salary by $10,000 which will have the following impact:

*     no music at the Saturday Mass
*     no music at funerals
*     no participation by Phil at the Saturday Orchestra or Brass rehearsals

---

[2] All dates are in 2007 unless otherwise indicated.
[3] To make matters worse, Cannata accosted Fr. Kirby in the presence of Fr. Kirby's guests, two women religious from an order for which a collection was taken at the Mass.

**Boulette & Golden, LLP**
E. Thomas Price
August 8, 2008
Page 6

* music at only 2 Masses on Christmas Eve
* no music for Stations of the Cross
* no special worship aids for Christmas, Holy Week and Easter
* reduced sound system setup for music events
* no sound system setup for non-music events
* no sound system assistance outside the Worship Space
* no coffee or donuts for the choir

Since the inequities will now be exacerbated, the Cannata family will not participate on a volunteer basis in the music program which has the following impact:

* no 11:30 Mass choir
* cantor only on Christmas day
* no music for "special" liturgies
* music only at 1 Mass on Holy Days and Ash Wednesday
* no music for the Stations of the Cross on Good Friday
* the quality of the music program will be significantly diminished thus making it much more difficult to retain and recruit volunteers

Other music department cuts will have the following impact:

* no Christmas choir, the 9:00 choir will do 1 Christmas Eve Mass and the children's choir will do 1 Christmas eve Mass
* no "Hallelujah Chorus" on Easter
* no music in Morris Hall for Christmas or Easter
* no youth choir (which was being thought about)
* no music when Phil is sick or on vacation
* no new music for the choir which is a significant motivation tool
* no vocal coaching for the choir
* no choir Christmas party
* reduced instrument maintenance
* reduced equipment repair and replacement"[4]

This proposal was clearly not made in good faith. In addition to its insubordinate tone, the proposal cut services in a manner grossly disproportionate to the cuts being requested and was tantamount to a refusal by Cannata to perform his job. Moreover, it only proposed $10,000 in cuts, as opposed to the $27,000 mandated by the Finance Council.

---

[4] Fr. Kirby and Judy Gesch are shown as copied on this e-mail. Neither of them, however, remembers seeing it. Fr. Kirby's e-mails went first to his secretary, and this one may have been filtered. In any event, Fr. Kirby did not involve himself in the budget details, since that was the province of the Finance Council. Gesch simply doesn't remember it, and never examined it in any detail until her July 25 meeting with Cannata, discussed below.

*Respondent, St. John Neumann Catholic Church*
*Response to EEOC Charge No. 451 2008 1332*

**Boulette & Golden, LLP**
E. Thomas Price
August 8, 2008
Page 7

Over the next few weeks Cannata continued to take his budget complaints to parishioners in an effort to put pressure on the Finance Council and the administration. This was in direct violation of SJN's instructions to the department heads.

On May 17, Cannata met with Fr. Kirby, Fr. Jim Evans (associate pastor), and business administrator Judy Gesch. Gesch's notes of the meeting are attached as Attachment 6.

At that meeting, the administration addressed several issues it had with Cannata. The first thing discussed at the meeting was the budget issue, and Cannata's "unprofessional handling" of the process by involving parishioners. It was explained to Cannata that such tactics do "not contribute to the well-being of the parish and could prove to be problematic during the planning and building of the new church." Cannata was instructed not to discuss budget and planning numbers outside the staff. He then assured the administration that he would not involve parishioners again.

In spite of this clear reprimand, Cannata maintained his position on the budget for the next two and half months of 2007. He had several heated discussions with members of the Finance Council during that time, and his stance on the issue was disruptive to the Church's efforts to plan the new church and divisive to the staff.

4. <u>Other conduct</u>. In addition to his refusal to cooperate in the budget process, Cannata refused to comply with other administration requests. Also during this time, he and his family members became increasingly unpleasant, disrespectful, and downright rude in their dealings with SJN staff, Fr. Kirby, and parishioners.

i. <u>Refusal to follow instructions</u>. Cannata's department was completely opaque to the administration. He bought equipment, supplies, and services without oversight, and he even kept the music department areas locked so that other staff and the administration could not enter. The music room, a closet in the music room, and the music office, all were outfitted with keypad locks. Only Cannata knew the codes, and he did not regularly inform the administration of them.

At the May 17 meeting, Cannata was instructed to prepare an inventory of all SJN music equipment. The Finance Council needed the information in order to obtain an accurate accounting of the Church's assets. In addition, the council believed that Cannata was keeping some Church assets at his home, and wanted an accounting of such assets. This inventory was also supposed to identify all Cannata personal assets comingled with Church assets. Cannata agreed to perform the inventory.

Cannata did not immediately prepare the inventory, and generally dragged his feet in responding to requests for it. As late as July 12, Judy Gesch was still requesting the inventory from Cannata, because she needed "information of what we have on campus to members of the Finance Committee as well as for my report for the Diocesan insurance renewal for the upcoming year." Attached as Attachment 7 is an example of the difficulty the council and the

**Boulette & Golden, LLP**
E. Thomas Price
August 8, 2008
Page 8

administration had dealing with Cannata in general, and on the inventory issue specifically. Cannata finally sent a responsive inventory on July 27.[5]

Also at the May 17 meeting, Fr. Kirby asked Cannata for the door keypad codes for the music room, storage closet, and music office. Although Cannata agreed to provide the codes, he did not do so immediately, and failed to comply with several subsequent requests for them. In fact, the Church never received the codes, or Cannata's keys to the music areas, even after Cannata's termination.

  ii. <u>Cannata family conduct</u>. Fr. Kirby recognized soon after his arrival at SJN that Cannata, and his family members, generally did not attempt to get along with the Church staff. They were aloof and the staff often found them unpleasant to deal with.

None of the pastors prior to Fr. Kirby had made any significant attempts to control Cannata or his family. The prevalent feeling apparently was that although it was often difficult to deal with them, since they made good music, Cannata and his family were left to do as they pleased. As a result, Cannata and his family seemed to believe that they did not answer to anyone at SJN as far as the music program was concerned.

Fr. Kirby's management style was different than that of his predecessors. He expected those working for him to respect him and follow his instructions, and sought to impose order and executive leadership on an administration that had little of either in the recent years.

During the Spring and early Summer months of 2007, however, while the budget dispute was playing out, the Cannata family behavior worsened. Fr. Kirby especially noticed that family members would refuse even to return his greetings or pleasantries, and pointed this out to Cannata in the May 17 meeting.

But the family's attitude toward Fr. Kirby did not improve. The relationship between the administration and the Cannatas grew worse, while the arguments over the music department budget escalated. The "drama" of the budget fight and the corresponding conduct by Cannata and his family were taking its toll on staff morale and on Fr. Kirby's patience.

Fr. Kirby became aware that Cannata planned vacation for some time in late June and early July[6]. Of course, Cannata was permitted to take vacation. But, like any other parish employee, he was expected to ensure that his job was covered. Indeed, even Fr. Kirby must arrange for another priest to fill in for him at Mass while he is on vacation. In Cannata's case,

---

[5] Although the Church did not learn this until after his employment was terminated, Cannata did indeed have Church property in his personal possession. This included several pieces of musical and electronic equipment, such as a laptop, digital camera, an Ahlborn-Galanti organ and organ synthesizer, a Korg digital recorder, a tube microphone, a drum set, a scanner, a computer hard drive. These items, according to Cannata's inventory, had a value of approximately $11,000.
[6] Cannata also apparently planned to take some sick leave at that time for knee surgery.

*Respondent, St. John Neumann Catholic Church*
*Response to EEOC Charge No. 451 2008 1332*

Fr. Kirby expected that Cannata would provide for music all the Masses he was ordinarily responsible for.

But upon Fr. Kirby's return from his vacation in mid-June, he learned that Cannata had decided that there would be no music at any Masses for the next 2 or 3 Sundays, because Cannata was going to be on vacation/leave. Fr. Kirby deemed this to be a serious neglect of Cannata's job duties, and planned to discipline Cannata for it on his return from leave. But in the meantime, and not wanting to interrupt Cannata's vacation, Fr. Kirby and the staff scrambled to find volunteers to provide music at the Masses while the Cannatas were away.

iii. <u>Rita Cannata accosts volunteers</u>. A group of volunteer musicians were performing music at a Mass on July 1 after Fr. Kirby's return, and while the Cannatas were on leave. Some of the Cannatas, including Rita, were at the Mass. After the Mass concluded, Rita aggressively approached the volunteers, spoke roughly to them, and brusquely snatched equipment and books from them and locked the items in the music office. In doing so, Rita had taken a personal music book belonging to Sally Robb, one of the volunteer musicians. Rita's conduct left the musicians shaken, and Robb had to wait for the return of her book until the administration (which still didn't have a key or the codes to the music office) could get Cannata to retrieve it from the locked room.

This was the last straw for Fr. Kirby. The Cannata's conduct had now affected volunteer parishioners. Fr. Kirby began to take concrete steps to effect the termination of Cannata's employment.

iv. <u>Continued refusal to cooperate with the budget</u>. In the meantime, Cannata's dispute with the finance committee continued. On July 25 Cannata had one final meeting on the matter. At that meeting were Cannata, Fred Yeo, and Judy Gesch. In that 2 ½ hour meeting, Cannata and Yeo had a heated discussion, and there was no resolution to the budget dispute. Again, Cannata was argumentative and confrontational. Attachment 8 is Gesch's notes of the meetings on July 25.

After Cannata left the meeting briefly and made a call on his cell phone, he returned to Gesch's office and said he wanted to talk and said, "fine, I'll do whatever you want." Gesch scheduled a meeting for 1:00 to discuss with Cannata the budget in more detail.

Gesch met with Cannata at 1:00. But despite Cannata's earlier apparent agreement, after 2 hours Gesch had still not received assurances that Cannata was willing to perform the duties of music director under a reduced budget. Cannata never moved significantly off his March 12 proposal. The meeting ended with no agreement on how the music department was going to achieve its budget target.

**Boulette & Golden, LLP**
E. Thomas Price
August 8, 2008
Page 10

    After hearing of the July 25 meeting, and considering it and all of the prior conduct by Cannata and his family, Fr. Kirby became convinced that Cannata's continued employment was not in the best interests of the parish.[7]

    The Church prepared a termination letter and proposed severance agreement to present to Cannata (Attachment 9). A meeting with Cannata was set for 5:30 on July 31. Cannata was not told the purpose of the meeting.

    But Cannata did not attend the meeting on July 31. Instead, the parish office received a phone call from Rita Cannata that Phil was in the "heart hospital." The next day, Fr. Kirby wished Cannata the best and instructed him to set up a meeting with the Church before he returned to work. That meeting was scheduled for August 8, and Cannata attended and was terminated then. At that meeting, Cannata was given the letter from the Church terminating his employment and the proposed separation agreement and release. Cannata never executed the separation agreement.

C.    <u>Summary</u>

    The Church terminated Cannata's employment because he was insubordinate in several respects. He was uncooperative, he defied legitimate authority, and either failed or refused to control his family members in their interaction with the Church and its staff and volunteers. The termination decision had nothing to do with Cannata's age, or any actual or perceived disability.[8] The charge is without merit, and the Commission should issue a no reasonable cause determination.

    Very truly yours,

    *[signature]*

    Gregg R. Kronenberger

GRK/ct

Enclosures

---

[7] The actions of Cannata and his family members after the termination confirm that they have a complete lack of respect for the pastor's authority. First, Cannata put up a website, www.isaiah59.org, the primary message of which was that Fr. Kirby and others were not truthful about parish matters. The initial version of the site was quite inflammatory, but Cannata has very recently redesigned the site and toned it down. In addition, Cannata and his family members publicly protested at Masses by attending in large numbers wearing black "www.isaiah59.org" t-shirts and engaging in disruptive activities. In general, Cannata has, quite inappropriately, taken his fight public in the parish and beyond.

[8] In this connection, the Church points out that Cannata initially claimed that he was terminated for making a complaint to OSHA about mold in his work areas. He has apparently abandoned that claim.

*Respondent, St. John Neumann Catholic Church*
*Response to EEOC Charge No. 451 2008 1332*